IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CHEROKEE NATION BUSINESSES,
LLC; CHEROKEE NATION
ENTERTAINMENT, LLC; and
JENNIFER MCGILL                                                                    PLAINTIFFS

v.                              No. 4:24-cv-969-DPM

STATE OF ARKANSAS; and ALEX
LIEBLONG, MARK LAMBERTH, STEVE
ANTHONY, DENNY EAST, MICHAEL
POST, JOHN SCHMELZLE, and STEVE
LANDERS, in their official capacities                              DEFENDANTS

ORDER

Two related companies—Cherokee Nation Businesses, LLC and Cherokee Nation Entertainment, LLC—and Jennifer McGill have sued the State of Arkansas and seven state officials in their official capacities. McGill works for CNE. For ease, the Court will refer to the defendants as "the State." The plaintiffs bring claims under 42 U.S.C. § 1983 for violations of the Contracts Clause, the Takings Clause, the Bill of Attainder Clause, and the Fourteenth Amendment. The State moves to dismiss the second amended complaint. The Court accepts the pleaded facts as true and draws all reasonable inferences in the plaintiffs' favor. *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). The Court's conclusions mostly track its preliminary analysis at the November 2024

TRO hearing. But some claims, especially the takings claims, require more analysis at this point. A bench trial is set for next week.

\*

**Contracts Clause.** The Eighth Circuit Court of Appeals has assumed without deciding that "a cause of action for a Contract Clause violation may be brought under § 1983." *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 728 (8th Cir. 2022). No party has raised this issue. This Court proceeds on the same assumption.

To state a solid Contracts Clause claim, a plaintiff must plead facts showing "a substantial impairment of a contractual relationship that is not reasonably tailored to advance a significant and legitimate public purpose." *Heights Apartments*, 30 F.4th at 731. CNE's casino license, like other gambling-related charters and grants, is not a "contract" for purposes of the Contracts Clause. *Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 437 (8th Cir. 2007) (agreements between the State of Iowa and a licensed retailer of monitor vending machines); *Stone v. Mississippi*, 101 U.S. 814, 821 (1879) (lottery charter); *Douglas v. Kentucky*, 168 U.S. 488, 502-03 (1897) (lottery grant). Neither are CNE's "understandings" with the Racing Commission. Doc. 46 at 10–11. "Whatever agreement existed between [CNE] and the [Commission] is not protected by the Contracts Clause of the federal constitution." *Hawkeye*, 486 F.3d at 437.

But CNE and CNB also allege that Amendment 104 nullifies, or at least substantially impairs, their contracts with "vendors, contractors, architects, engineers, and government entities[.]" *Doc. 46 at 10.* McGill says the Amendment impermissibly interfered with her employment contract, too. *Ibid.* These impairments, they continue, were not reasonably foreseeable for several reasons.

- The electorate had approved Amendment 100, authorizing a casino license in Pope County, by healthy margins in 2018;

- The contracts were necessary to comply with Amendment 100 and the Racing Commission's Casino Gaming Rules;

- The Racing Commission had never taken any negative action against any casino licensee; and

- Under Amendment 100, no statute or rule could have revoked CNE's casino license without cause, as Amendment 104 did.

Taking the pleaded facts as true, and drawing all reasonable inferences in the plaintiffs' favor, it's at least plausible that the plaintiffs lacked "a fair and appreciable warning of an impending intervention into their agreements." *Holiday Inns Franchising, Inc. v. Branstad*, 29 F.3d 383, 385 (8th Cir. 1994). Amendment 104 did what legislators and regulators could not — it eliminated casino gaming in Pope County and revoked CNE's license without cause. ARK. CONST. amend. 100, § 4; *Heights Apartments*, 30 F.4th at 731. And according to the plaintiffs, they relied on these constitutional protections when they made these multimillion-dollar deals. *Doc. 46 at 10.* All these issues, including

those about Amendment 104's purpose and tailoring, will benefit from a full record.

*

**Takings Clause.** The Fifth Amendment's Takings Clause applies to the States by way of the Fourteenth Amendment. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021). It prohibits the government from taking "private property . . . for public use, without just compensation." U.S. CONST. amend. V. The plaintiffs allege the State took their property—the casino license, plus various interests in real property and contracts—without a public purpose and without just compensation. They seek alternative remedies: equitable relief under the Public Use Clause, or money damages under the Just Compensation Clause. *Doc. 34 at 21*. In response, the State says the plaintiffs have not alleged a protected property interest.

*Property Interests*\*

To state a solid takings claim, the plaintiffs must identify a property interest. *Hawkeye*, 486 F.3d at 439. Whether they have done so depends on "existing rules or understandings about property rights." *Tyler v. Hennepin County*, 598 U.S. 631, 638 (2023) (quotations omitted). Arkansas law is one, though not the only, data point for that

---

\* This analysis also applies to the plaintiffs' due process claims. See below.

analysis. *Ibid.* This Court must "also look to traditional property law principles," plus history and precedent. *Ibid.* (quotations omitted).

McGill does not allege a property interest. CNE and CNB allege property interests in the casino license, various business contracts, and real property. *Doc. 46 at 22.* Their real property interests are no doubt entitled to constitutional protection. *E.g., Robinson v. City of Ashdown*, 301 Ark. 226, 229-30, 783 S.W.2d 53, 55 (1990). The core dispute is whether the casino license and contracts are "property" for purposes of the Fifth and Fourteenth Amendments.

Start with CNE's casino license. Arkansas voters first authorized casino licenses (including the one at issue here) in 2018. ARK. CONST. amend. 100, § 3(a). Arkansas courts have not yet decided whether a casino license creates a property interest; and Amendment 100 is silent on that front. This much is clear, though. The license was good for ten years. ARK. CONST. amend. § 100, 4(q). Its renewal would have been mandatory had CNE complied with all requirements. *Ibid.* It was transferable to qualified parties. § 100, 4(e)(12). And it could only be suspended or terminated for violations of Amendment 100 or the Arkansas Racing Commission's rules. § 100, 4(e)(8).

The State argues against transferability, pointing to the license itself. It says, "A person who is the owner of any interest in a licensed gaming establishment shall not transfer . . . that interest without prior approval of the Arkansas Racing Commission." *Doc. 46 at 177.* But the

State overlooks Amendment 100's plain words: "The Racing Commission shall allow licensees to transfer their casino license" to a party with "casino gaming experience." ARK. CONST. amend. 100, § 4(e)(12).

The license's transferability indicates that it is indeed property. *Compare Hawkeye*, 486 F.3d at 440. The fact Amendment 104 "revoked" it implies "the withdrawal of an existing entitlement." *Stauch v. City of Columbia Heights*, 212 F.3d 425, 431 (8th Cir. 2000). And the licensing scheme itself establishes "substantive limitations on the [State's] exercise of official discretion," which is one way the State could have created a property interest in the license. *Stauch*, 212 F.3d at 429–30; *see also Movers Warehouse, Inc. v. City of Little Canada*, 71 F.3d 716, 719 (8th Cir. 1995).

The State leans hard on Casino Gaming Rule 4.040 in support of its no-property argument. According to that rule, "A Casino license is a revocable privilege, and no holder thereof shall be deemed to have acquired any vested rights therein or thereunder." But while Rule 4.040 may inform existing rules or understandings about property rights, it cannot itself settle the property question. *Tyler*, 598 U.S. at 638–39; *see also Cleveland v. United States*, 531 U.S. 12, 25 n.4 (2000); *Hall v. Meisner*, 51 F.4th 185, 189–90 (6th Cir. 2022). CNE has therefore alleged a legally plausible property interest in its license.

That leaves the business contracts. The companies assert property interests in an Economic Development Agreement with Pope County and "numerous other contracts, including contracts with hospitality companies, engineers, contractors, and architects." *Doc. 46 at 20*. The EDA is attached to the second amended complaint. *Doc. 46 at 39*. No details about the other contracts are pleaded. The Court therefore limits its analysis to the EDA.

In Arkansas, enforceable contract rights create property interests. *Jasper School District No. 1 of Newton County v. Cooper*, 2014 Ark. 390, at 9–12, 441 S.W.3d 11, 16–18. For purposes of the Fifth and Fourteenth Amendments, though, the focus is on the right to be enforced, not on whether a contract exists. *Buchanan v. Little Rock School District of Pulaski County*, 84 F.3d 1035, 1038 (8th Cir. 1996) (Arkansas law). Applying Massachusetts law, the First Circuit, speaking through Justice Souter, illustrated this principle when it held that a private contract premised on a state-issued casino license did not create a property interest.

> The mere existence of a contract . . . is not sufficient to show a 'protected property interest' for purposes of a due process claim of improper government interference. . . . Rather, the critical enquiry is whether the aggrieved party to the contract has a legitimate claim of 'entitlement' to the benefits of the contract that government action may not abridge.

*Caesars Massachusetts Management Co., LLC v. Crosby*, 778 F.3d 327, 333 (1st Cir. 2015). This reasoning is helpful here. The State was not a

party to the EDA; the County was. The casino license was the basis, not an enforceable benefit, of that agreement. And the EDA itself contemplated some State interference with the license. *Doc. 46 at 46–48* (EDA paragraphs 6.3(b) (Termination) & 7.7(a)(vi) (Force Majeure)). Because the plaintiffs haven't shown a legitimate claim of entitlement to the Economic Development Agreement's benefits, they haven't alleged a protected property interest in that contract.

### *Public Purpose*

If the government takes private property without a public purpose, the taking is "void." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 245 (1984). A taking satisfies the Public Use Clause if it is "rationally related to a conceivable public purpose." *Dahlen v. Shelter House*, 598 F.3d 1007, 1012 (8th Cir. 2010) (quotations omitted). "This deferential standard echoes the rational-basis test used to review economic regulation under the Due Process and Equal Protection Clauses." *Kelo v. City of New London*, 545 U.S. 469, 490 (2005) (Kennedy, J., concurring). For reasons the Court explains below, the plaintiffs' claim that no public purpose exists here fails on rational basis review.

### *Just Compensation*

Because the plaintiffs are not entitled to equitable relief under the Public Use Clause, the question is whether they're entitled to legal relief under the Just Compensation Clause. *City of Monterey v. Del Monte*

*Dunes at Monterey, Ltd.*, 526 U.S. 687, 710 (1999). That question presents two issues that neither the parties nor the Court identified at the November 2024 TRO hearing: Section 1983's "person" requirement and Eleventh Amendment immunity specific to takings claims.

A claim for just compensation under the Takings Clause is a claim for money damages. *DeVillier v. Texas*, 601 U.S. 285, 292 (2024). But a state official sued for damages in his official capacity (as is the case here) is not considered a "person" for purposes of § 1983. *Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017). The Seventh Circuit recently rejected a takings claim for this reason. *Thiele v. Board of Trustees of Illinois State University*, 35 F.4th 1064, 1066 (7th Cir. 2022) (Easterbrook, J.).

Eleventh Amendment immunity presents a separate issue. *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016). The plaintiffs helpfully addressed it in their response. *Doc. 34 at 21–23*. The State has not yet taken a position. The plaintiffs are correct that "the Eleventh Amendment bars a [takings] claim against the State in federal court as long as state courts remain open to entertain the action." *EEE Minerals, LLC v. North Dakota*, 81 F.4th 809, 816 (8th Cir. 2023). They contend this rule permits their takings claims "because the State of Arkansas does not allow for adjudication of such claims in its courts." *Doc. 34 at 21*. But the danger here is in conflating no immunity under the Eleventh Amendment with a cause of action under § 1983. *Arizonans for Official*

*English v. Arizona*, 520 U.S. 43, 68–69 (1997). Even if the Amendment creates no bar, the statute's "person" requirement remains.

A related, and as yet unexplored point, is whether the Takings Clause is self-executing, which would eliminate any § 1983 difficulty. The Supreme Court has considered this procedural knot but not yet untied it. "Our precedents do not cleanly answer the question whether a plaintiff has a cause of action arising directly under the Takings Clause." *DeVillier*, 601 U.S. at 292. This Court looks forward to the parties' views on all these issues in due course.

\*

**Bill of Attainder Clause.** CNE believes that Amendment 104 is a bill of attainder because it was specifically punished without a trial. *Selective Service System v. Minnesota Public Interest Research Group*, 468 U.S. 841, 847 (1984). Although Amendment 104 doesn't call out CNE by name, a bill of attainder can exist where the members of a targeted group are easily identifiable. *United States v. Lovett*, 328 U.S. 303, 315–16 (1946). And, as CNE emphasizes, Amendment 104 revoked its casino license, no other entity's. *Crain v. City of Mountain Home*, 611 F.2d 726, 728–29 (8th Cir. 1979).

Three inquiries guide whether Amendment 104 inflicted a "forbidden punishment" on CNE: "an historical test, a functional test, and a motivational test." *WMX Technologies, Inc. v. Gasconade County*, 105 F.3d 1195, 1202 (8th Cir. 1997). Determining if a punishment is

forbidden is a fact-specific inquiry, in which "each case has turned on its own highly particularized context." *Selective Service*, 468 U.S. at 852.

History teaches that bills of attainder have included the "punitive confiscation of property by the sovereign." *Nixon v. Administrator of General Services*, 433 U.S. 425, 474 (1977). At least one Court has noted that they may also include a permanent bar on an entity's operations. *Compare WMX Technologies*, 105 F.3d at 1202. The parties have not yet offered any specific historical examples. But CNE's creative claim has, at a very general level, some historical basis.

As to the functional test, the inquiry is whether Amendment 104 "reasonably can be said to further nonpunitive legislative purposes." *Nixon*, 433 U.S. at 475. This test "is more exacting than rational basis review." *Kaspersky Lab, Inc. v. United States Department of Homeland Security*, 909 F.3d 446, 456 (D.C. Cir. 2018) (quotations omitted). A fuller record will help the Court assess the relationship between Amendment 104's purpose and the burdens imposed on CNE. *E.g., Crain*, 611 F.2d at 729.

Finally, the motivational test asks whether the legislative record shows an "intent to punish." *Nixon*, 433 U.S. at 478. Because Amendment 104 was a voter initiative, the legislative record is difficult to pin down at this point. But CNE has plausibly alleged that the driving force behind the Amendment was punitive. *Compare WMX Technologies*, 105 F.3d at 1203.

While the Court acknowledges some skepticism about the fit between this new claim and what happened here, the plaintiffs have pleaded enough to go forward on it.

\*

**Procedural Due Process.** The plaintiffs say that Amendment 104 deprived them of property without due process of law. *Doc. 46 at 23.* The Court disagrees. They were not entitled to notice or a hearing because Amendment 104 was a "legislative act equally affecting all those similarly situated." *Foster v. Hughes*, 979 F.2d 130, 132 (8th Cir. 1992). The State, through its referendum process, eliminated casino gaming in Pope County for everyone. It did not make fact-bound, individualized determinations for each plaintiff. *Leapheart v. Williamson*, 705 F.3d 310, 314 (8th Cir. 2013). The referendum process was all the process the plaintiffs were due. *Gattis v. Gravett*, 806 F.2d 778, 781 (8th Cir. 1986); *City of Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 675–76 (1976).

\*

The equal protection and substantive due process claims are subject to rational basis review. That's because the equal protection claim is a "class of one" claim, and the substantive due process claim is not based on a fundamental right. *Bruning v. City of Omaha*, 6 F.4th 821, 825 (8th Cir. 2021) (equal protection); *Gunderson v. Hvass*, 339 F.3d 639, 643 (8th Cir. 2003) (substantive due process). And the no-public-use

takings claim, as already discussed, is reviewed under a standard that "echoes" rational basis. *Kelo,* 545 U.S. at 490 (Kennedy, J., concurring). "Rational-basis review is highly deferential to the legislature or, in this case, to the electorate that directly adopted [Amendment 104] by the initiative process." *Citizens for Equal Protection v. Bruning*, 455 F.3d 859, 867 (8th Cir. 2006), *abrogated by Obergefell v. Hodges*, 576 U.S. 644 (2015).

Amendment 104 survives rational basis review. States have a "legitimate" interest in regulating gambling, "including its expansion and contraction." *Hawkeye*, 486 F.3d at 439. The Amendment's ballot question committee—Local Voters in Charge—touted "local control" over casino-related decisions. *Doc. 46 at 12.* The plaintiffs say local control was a ruse. *Ibid.* Their argument here fails in two ways. First, in the referendum context, the Court must look to "the language of the initiative petition itself" to determine its purpose. *MSM Farms, Inc. v. Spire*, 927 F.2d 330, 333 (8th Cir. 1991). What actually motivated Amendment 104 is "entirely irrelevant for constitutional purposes . . .." *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993). Second, on rational basis review, "any reasonably conceivable" justification suffices. *Gallagher v. City of Clayton*, 699 F.3d 1013, 1019 (8th Cir. 2012). That justification "may be based on rational speculation unsupported by the evidence or empirical data." *Gallagher*, 699 F.3d at 1020 (quotations omitted).

Based on the ballot measure's text, which was attached to the second amended complaint, Arkansas voters could have reasonably believed that the Amendment's purpose was to give counties veto power over new casinos. *Doc. 46 at 182*. And even setting local control aside, it was not unreasoned for voters to conclude that three casinos were more prudent than four.

The plaintiffs next challenge the fit between Amendment 104 and its asserted rationale. They say the Amendment does not accomplish local control because it revoked CNE's casino license even though a majority of Pope County voters cast ballots against the Amendment in November 2024. *Doc. 46 at 33*. While that outcome is odd, "perfection is by no means required." *Gallagher*, 699 F.3d at 1019 (quotations omitted). In the future, a county that does not already have a casino can, in fact, veto one in its backyard. ARK. CONST. amend. 104, § 3. That course of action makes some sense. As the State points out, voters in Pope County opposed a casino in the November 2018 referendum, while voters in Crittenden, Garland, and Jefferson Counties supported one. *Doc. 30 at 19–20*. Plus, at the time of the 2024 general election, there was no casino in Pope County, unlike the up-and-running casinos in the other three counties. *Doc. 30 at 20*.

At bottom, Amendment 104's means rationally relate to its ends. "It is up to the people of the State of [Arkansas], not the courts, to weigh the evidence and decide on the wisdom and utility of measures

-14-

adopted through the initiative and referendum process." *MSM Farms*, 927 F.2d at 333; *see also Beach Communications*, 508 U.S. at 313. The plaintiffs' equal protection, substantive due process, and no-public-purpose takings claims therefore fail.

*   *   *

The State's motion to dismiss, *Doc. 67*, is partly granted and partly denied as specified. To sum up, these claims are dismissed: procedural due process, substantive due process, equal protection, and takings based on no public use. And these claims will proceed to trial: Contracts Clause (only the contracts with vendors, contractors, employees such as McGill, architects, engineers, and government entities), Takings Clause (just compensation), and Bill of Attainder Clause.

So Ordered.

*WPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

18 March 2025