IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CHEROKEE NATION BUSINESSES,
LLC;  CHEROKEE NATION
ENTERTAINMENT, LLC;  and
JENNIFER MCGILL                                              PLAINTIFFS

v.                              No. 4:24-cv-969-DPM

STATE OF ARKANSAS;  and ALEX
LIEBLONG, MARK LAMBERTH, STEVE
ANTHONY, DENNY EAST, MICHAEL
POST, JOHN SCHMELZLE, and STEVE
LANDERS, in their official capacities          DEFENDANTS

## ORDER

This is the Court's Order on the privilege disputes between the
plaintiffs and non-parties.  As directed, the non-parties have filed the
disputed documents *ex parte* and under seal.  *Doc. 92.*  By agreement,
they have also produced drafts of Issue 2's popular name, ballot title,
and text to the plaintiffs.  *Doc. 99 at 20–21.*  The plaintiffs say these drafts
were scrubbed of metadata.  They seek the unscrubbed versions too.

Local Voters in Charge, Issue 2's ballot question committee, is the
client asserting privilege.  Because this is a federal question case,
the federal common law of attorney-client privilege controls.  Fed. R.
Evid. 501;  *In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994).

\*

**Attorney-Client Privilege.**  At issue is whether LVC waived its attorney-client privilege by involving certain third parties in drafting-related communications.  The cast of characters is important.

Who were LVC's members?   According to the statement of organization that it filed with the Arkansas Ethics Commission, LVC's members were Jim Knight, Bill James, Hans Stiritz, and Rick Thone. *Doc. 46 at 175*.   And under the Ethics Commission's rules, LVC was required to list "each person who is a member" in that statement. 7 Code Ark. R. § 7-107(b)(4)(A).  The record and applicable state law do not support LVC's assertions that that Larry Walker, Anna Stiritz (Hans's wife), and Cliff Goodin were LVC members.  More on Walker and Mrs. Stiritz below.  But the record does establish that, though not a member, Goodin was closely involved with LVC from the start until he died.  He helped form LVC.  And the only email he was copied on was during that early period.

Who were LVC's lawyers?  For privilege purposes, anyone from whom LVC sought legal advice and believed to be a lawyer. 1 CHARLES T. MCCORMICK, MCCORMICK ON EVIDENCE § 88 (9th ed.).  "Payment or agreement to pay a fee . . . is not essential."  *Ibid.*  LVC formally retained Elizabeth Murray, Kathy McCarroll, and Nicole Gillum.  It also used Walker and Mrs. Stiritz (both lawyers) on a volunteer basis. *Doc. 82-11 at 2*; *Doc. 82-12 at 3*.  The privilege extends to Walker and Mrs. Stiritz

- 2 -

insofar as communications involving them were made for the purpose of obtaining or providing legal advice. *Pucket v. Hot Springs School District No. 23-2*, 239 F.R.D. 572, 580 (D.S.D. 2006); Restatement (Third) of the Law Governing Lawyers § 72 (Am. L. Inst. 2000).

Who were LVC's representatives? Hans Stiritz explained in his affidavit that LVC "formally hired" John Sowinski—an expert on statewide ballot initiatives—to help with Issue 2's drafting and marketing. *Doc. 82-11 at 2*. Sowinski was deeply involved in both, which were the "*sine qua non*" of LVC's existence. *Bieter*, 16 F.3d at 934. LVC's members relied on his expertise during the drafting process, where their aim was to maximize Issue 2's political success without weakening its legal durability. A free flow of communication was vital. It's clear to the Court that Sowinski "was in all relevant respects the functional equivalent of an employee." *Bieter*, 16 F.3d at 938.

The same cannot be said for members of Capitol Advisors Group, the Choctaw Nation's lobbying firm. In response to the plaintiffs' motion to enforce subpoenas, *Doc. 49*, the non-parties stated that CAG "assisted LVC with Issue 2 but had no formal relationship with LVC." *Doc. 55 at 2*. The Nation's chief legal officer explained in his affidavit that CAG members were "*the Nation's* representatives" during the 2024 general election, and that they "volunteered" political services to LVC. *Doc. 82-13 at 3* (emphasis added). Gillum echoed that arrangement in her affidavit: "The Choctaw directed myself and partner John Burris to

- 3 -

work directly with the committees as the Nation's representatives, where we volunteered campaign consulting and advice." *Doc. 82-12 at 3*. There's no dispute that LVC took the free help. But no agency relationship between LVC and members of Capitol Advisors Group has been shown. Restatement (Third) of the Law Governing Lawyers § 73 cmt. d (Am. L. Inst. 2000).

LVC's members and lawyers, plus Goodin and Sowinski, are the "privileged persons" for purposes of attorney-client privilege. Restatement (Third) of the Law Governing Lawyers § 70 (Am. L. Inst. 2000). The Court has studied the disputed documents. Applying the law specified in *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1977), the Court holds that the following communications are privileged:

- LVIC_000005 (plaintiffs' request withdrawn)
- LVIC_000006 (plaintiffs' request withdrawn)
- LVIC_000577–590
- LVIC_000591–594
- LVIC_000633–639
- LVIC_000640
- LVIC_000641–643

No waiver issue is presented as to all these things.

The remaining disputed communications involve the LVC-related privileged persons and non-privileged persons from a core

group:   the Choctaw Nation's lawyers, employees, and lobbyists. LVC claims a common interest with the Nation "in opposing a casino in Pope County." *Doc. 82 at 8*. As to communications with the Choctaw Nation, and its associated individuals, LVC's privilege was waived — unless some exception to waiver applies.

"The common interest doctrine is an exception to waiver of the attorney client privilege in a situation where a party discloses otherwise privileged information to a third-party with which it shares a common interest." *Williams v. BHI Energy I Power Services LLC*, 2022 WL 17485550, at *3 (D. Minn. 7 Dec. 2022). The U.S. Court of Appeals for the Eighth Circuit has described this doctrine as a "loose standard," explaining that the common interest "may be either legal, factual, or strategic in character." *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997). This precedent was one of the Whitewater-related matters. The Eighth Circuit has not elaborated on this doctrine in almost thirty years. And district courts in this circuit have meanwhile wrestled with it. *Williams*, 2022 WL 17485550, at *4 (collecting cases).

Some things, though, are clear in this case. First, LVC and the Choctaw Nation are not in the typical common legal interest situation. They are not, for example, co-defendants or likely co-defendants facing a claim for damages arising from the same event. *E.g.*, Restatement (Third) of the Law Governing Lawyers § 76 cmt. e, illus. 1 (Am. L. Inst.

2000). Second, there's no common factual interest. All agree that the Choctaw Nation's interest in Issue 2 was financial. *Doc. 82-12 at 3*; *Doc. 82-13 at 2*. LVC—Issue 2's citizen-based ballot question committee—did not share that dollars-and-cents interest.

But it's also clear that these groups were mutually aligned on a vigorously contested public policy matter: opposing a casino in Pope County. Both sides were deeply involved in drafting Issue 2. And the documents make plain that everyone emphasized confidentiality. Nothing was to be shared outside this joint endeavor. Nicole Gillum, for example, was a lawyer for both LVC and the Choctaw Nation.

To be sure, ballot initiatives, like all campaigns, are political endeavors. But the communications at issue show that law and politics were inextricably intertwined throughout the drafting process. Round after round, the discussions and drafts sought to balance the text's public reception with its legal resilience. (They were, after all, proposing a constitutional amendment.) There was a free-flowing dialogue between a tight group of politicos, lawyers, and industry about this goal. And as the November 2024 election results demonstrated, that conversation advanced LVC's and the Nation's shared objectives, as well as their individual interests.

The non-parties' stated common interest—opposing a casino in Pope County—is perhaps imprecisely worded. Many voters last fall

shared in that interest. The real common interest here, the Court concludes, was a quasi-legal endeavor to amend Arkansas's Constitution through the State's referendum process, thereby eliminating an aborning casino in Pope County. (And that process presented its own array of legal issues separate from the drafting process.) It's a close call. But considering the attorney-client privilege's vital role in our law, the Court declines to compel disclosure in the circumstances presented. "An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981).

\*

**Work Product.** Pursuant to an agreement, the plaintiffs now have the drafts of the popular name, ballot title, and amendment. *Doc. 101* (Sealed Exhibit). These are the same drafts that the non-parties shared with the Court. *Doc. 96* (Sealed Exhibit). The Court appreciates and applauds this cooperation. The non-parties' work-product objections are moot. The Court likewise declines to compel the draft-related metadata for the reasons explained above.

\*

**Loose End.** Many of the disputed communications are emails with attachments. Many of those attachments are public documents. The Court directs the non-parties to produce all public documents

attached to their communications by noon tomorrow, 22 March 2025.

*     *     *

The disputed communications, *Doc. 82-9*, are privileged. No waiver occurred. Plaintiffs' motion to enforce, *Doc. 49*, is denied. The work-produce objections are moot based on post-motion collaboration.

So Ordered.

_WPMarshall Jr._
D.P. Marshall Jr.
United States District Judge

_21 March 2025_